IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>ROY NIELSEN HAFEN,<br><br>    Debtor.<br><br><br>LARRY ADAMS, JED R. CHRISTENSEN, KIRK R. HARRISON, ROGER T. OLDROYD, and RANDY T. SIMONSEN,<br><br>    Appellants,<br><br>v.<br><br>ROY NIELSEN HAFEN,<br><br>    Appellee. | **OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER DENYING MOTION FOR RECUSAL OR DISQUALIFICATION**<br><br>Case No. 2:23-cv-00230-JNP<br><br>Bankruptcy No. 04-25018<br><br><br>District Judge Jill N. Parrish |

This action is an appeal from a matter before Judge Thurman of the United States Bankruptcy Court for the District of Utah ("Bankruptcy Court" or "Court"). Through this appeal, Larry Adams, Jed R. Christensen, Kirk R. Harrison, Roger T. Oldroyd, and Randy T. Simonsen ("Appellants" or "Creditors") seek review of the Bankruptcy Court's denial of their motion for recusal or disqualification, through which they move for the assignment of a new Bankruptcy Judge to the matter. *See generally* ECF Nos. 18 ("Appeal"), 19 ("Appellee Br."), 22 ("Appellant Reply Br."). Exercising appellate jurisdiction under 28 U.S.C. § 158(a), this court **AFFIRMS** the Bankruptcy Court's decision to deny the motion for recusal or disqualification for the reasons set out below.

# BACKGROUND

## I. Factual Predicate

The factual background for this action is outlined in greater depth in prior orders of the Bankruptcy Court. *See, e.g.*, *In re Hafen*, 640 B.R. 581, 584-87 (Bankr. D. Ut. 2022). However, to briefly restate the factual predicate in broad strokes, this action involves a decade-and-a-half-old bankruptcy. *Id*. at 584-85. Roy N. Hafen ("Appellee" or "Debtor") filed a voluntary petition for Chapter 7 bankruptcy relief on March 30, 2004. *Id*. at 585. At that time, the Creditors failed to challenge the discharge or seek non-dischargeability of any debt, and the bankruptcy case was closed on May 11, 2005. *Id*. at 586.

In July 2018, Creditors initiated an action in Utah state court against affiliates of the Debtor, as well as the debtor himself, seeking, among other things, to recover property that the Debtor had transferred to the affiliates prepetition without proper disclosure in the bankruptcy case. *Id*. The state-court action also alleges that the Debtor fraudulently sold unregistered securities to the Creditors and thereby caused them harm. *Id*. The Debtor, Creditors argue, was and is a necessary party to the state-court action, even if in name only, and Creditors insist that they do not seek any relief from the Debtor personally. *Id*. In addition to the state-court action, the Creditors filed a motion to reopen the Debtor's bankruptcy case that same month, which motion was granted by the Bankruptcy Court, and a Chapter 7 trustee was appointed. *Id*.

## II. Violation of the Discharge Injunction

The Debtor subsequently filed a Motion for Sanctions in the Bankruptcy Court, arguing that the Creditors' state-court action violated the Debtor's discharge injunction by naming him as a defendant. *Id*. at 587. The Bankruptcy Court denied the Debtor's motion, but the Tenth Circuit Bankruptcy Appellate Panel ("BAP") reversed the denial and remanded the matter back to the

2

Bankruptcy Court with instructions to make determinations on the matter of claim ownership and standing, and then to reconsider whether the discharge injunction had been violated. *Id*.; *see also In re Hafen*, 616 B.R. 570 (10th Cir. BAP 2020). On remand, the Bankruptcy Court changed course and determined that the Creditors had violated the Debtor's discharge injunction by naming him as a co-defendant in the state action. *In re Hafen*, 640 B.R. at 595. This outcome, the Bankruptcy Court explained, was due to the Court's election "to follow the suggestion from the concurrence [to the BAP Opinion] [to utilize] the tests in *Robben* and *Walker* conjunctively." *Id*. at 591.

### III. Order on Motion to Sell, Right of First Refusal

In the interim period between the BAP Opinion and the Bankruptcy Court's second order on the issue of sanctions, the Bankruptcy Court also entered an order on the Chapter 7 Trustee's motion to sell property to the Creditors. *See In re Hafen*, 625 B.R. 529 (10th Cir. BAP 2020). The other defendants in the state-court action, like the Debtor, objected to the motion to sell. *See* Appendix at 312-20. In their joinder-in-objection motions, the other defendants were represented by attorneys from McKay, Burton & Thurman ("Law Firm" or "Firm").

In resolving the motion to sell, the Bankruptcy Court determined (upon objection by the Debtor) that transfer restrictions on certain interests, established by business-entity operating agreements, were still in effect and would apply to the Trustee's sale. *Id*. at 537-38. The Trustee moved the Bankruptcy Court to reconsider its order on the motion to sell as it related to the rights of first refusal, and the Bankruptcy Court issued a ruling on the motion to reconsider on September 23, 2021. *See* ECF No. 20-1 ("Appendix") at 367. In that ruling, the Court considered whether it had made a mistake in its prior ruling as well as the effect of "new evidence [that had] come to light." *Id*. at 371. Ultimately, the Bankruptcy Court elected to deny the motions to

3

reconsider and left the prior order on the motion to sell in place, in part due to parties' reliance on the prior order and the risk of prejudice. *See id*. at 375-76.

## IV. Recusal Order

Subsequently, the Creditors filed a motion for recusal or disqualification, requesting that Judge William Thurman recuse or be disqualified from the case. This motion was addressed during a hearing held on March 30, 2023. *Id*. at 1016-33. On March 31, 2023, the Court published its written order denying the Creditors' motion. *Id*. at 1034-35 ("Recusal Order"). On April 11, 2023, Creditors filed their notice of the instant appeal from the Bankruptcy Court's decision. *See* ECF No. 1.

## LEGAL STANDARD

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Subsection (b)(1) further provides for mandatory recusal where a judge "has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts." 28 U.S.C. § 455(b)(1); *accord United States v. Ritter*, 540 F.3d 459, 462 (10th Cir. 1976). The basic test under 28 U.S.C. § 455(a) "is whether a reasonable person armed with the relevant facts would harbor doubts about the judge's impartiality." *Maez v. Mountain States Tel. & Tel.*, 54 F.3d 1488, 1508 (10th Cir. 1995) (citations omitted). However, importantly, "[t]here is as much obligation for a judge *not* to recuse when there is *no occasion* for him to do so as there is for him to do so when there is." *Maez*, 54 F.3d at 1508 (emphasis added). "A judge should not recuse himself on unsupported, irrational, or highly tenuous speculation." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987).

"The recusal statute should not be construed so broadly as to become presumptive or to require recusal based on unsubstantiated suggestions of personal bias or prejudice." *Bryce v.*

4

*Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 659-60 (10th Cir. 2002). "[J]udicial rulings alone *almost never* constitute a valid basis for a bias or partiality motion," *Liteky v. United States*, 510 U.S. 540, 555 (1994) (emphasis added), and "only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal." *Id*.

Recusal decisions are reviewed for abuse of discretion. *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992). "Under the abuse of discretion standard, a [] court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Palzer v. Cox Okla. Telecom, LLC*, 671 F. App'x 1026, 1027 (10th Cir. 2016) (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997)).

## DISCUSSION

The court begins by noting that Appellants do not allege any extrajudicial source of bias whatsoever, instead relying entirely on adverse rulings to make their case. At bottom, Appellants argue that "Judge Thurman has made clearly erroneous ruling after clearly erroneous ruling that favor and are for the benefit of the clients of McKay, Burton & Thurman." Appellant Reply Br. at 24; *accord* Appeal at 11. Chief among these are the Bankruptcy Court's determinations regarding (1) the validity of certain contractual rights of first refusal and their applicability to the Trustee's sale of Bankruptcy estate assets; and (2) the relationship between past Tenth Circuit cases and their effect in determining whether the Creditors, through naming the Debtor in the state court action, violated the Debtor's discharge injunction. *See* Appeal at 66.

The court begins its discussion of Appellants' arguments by first noting that only the Bankruptcy Court's Recusal Order is substantively reviewed here. While Appellants' theory of

5

bias relies on and refers to other orders and determinations of the Court, those decisions are reviewed neither for legal error nor abuse of discretion. Instead, they are considered only under Appellants' argument that the rulings are *so clearly erroneous* that they reveal some latent bias held by the Bankruptcy Court in favor of the Law Firm. While Creditors may be entitled to substantive review of these determinations at a future juncture, this appeal is not an appropriate vehicle for full appellate consideration. In short, this court emphasizes that it is *not* offering legal rulings on any doctrines of bankruptcy law, and its explanation of the legal predicate and issues involved is offered only to contextualize the Bankruptcy Court's Recusal Order, and to consider whether that order represented an abuse of discretion.

Second, the court sees fit to emphasize the previous holding of the United States Supreme Court that "judicial rulings alone *almost never* constitute a valid basis for a bias or partiality motion," *Liteky*, 510 U.S. at 555 (emphasis added), and "only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal." *Id*.

The hurdle that Appellants must surmount is remarkably high—not only must they show that the Bankruptcy Court's legal rulings were erroneous, but they must show that such rulings were *so profoundly erroneous* that they are without explanation besides Appellants' proffered theory of latent bias, and that the Court's election not to recuse thereby constituted "a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Palzer*, 671 F. App'x at 1027.

### I.     Bias Regarding Former Law Firm

Central to Appellants' argument is that Judge Thurman "has exhibited manifest personal bias in favor of McKay, Burton & Thurman and, therefore, in favor of Debtor and other

Defendants[.]" Appeal at 10. Such bias exists, Appellants contend, because Judge Thurman practiced law at the Firm from 1974 until 2001, and because his father was a name partner at the same. *Id*. at 8. As mentioned above, Appellants' theory is that the Court's personal bias is manifest in a series of erroneous legal rulings, which are discussed below, which Appellants argue were to the benefit of the Law Firm.

As an initial matter, this court notes that, generally, no bias is presumed or imputed where a judge's former law firm appears before him, and Appellants offer no authority to the contrary. The Judicial Conference's Compendium of Selected Opinions regarding Canon 3, Section 3.3-1, Compendium § 2.7(c), advises that "[t]he fact that a party to litigation is, in other matters, a client of the judge's former law firm does not necessitate recusal." And *even if* the former firm represented these clients while the judge was affiliated with the firm, the judge does not necessarily need to recuse if there is no showing that the representation was in the same matter. See § 3.6-5, Compendium of Selected Opinions.

Thus, the fact of Judge Thurman's prior affiliation with the Firm some 22 years ago does not move the ball towards a recusal mandate, and Appellants' burden of showing bias in the Court's judicial rulings alone remains remarkably high under the "almost never" standard announced by the Supreme Court in *Liteky*. Additionally, Appellants fail to thread the needle of meaningfully demonstrating that the Law Firm or its clients have the winning streak that Appellants claim, as Appellee points out through his review of the Court's rulings on the Firm's objections to the motions to sell. *See* Appellee Br. at 14-17.[1]

---

[1] Because the Firm only participated in the litigation at the motions to sell, Appellants' arguments that *every subsequent decision* following the resolution of the motions to sell was tainted by prejudice seem implausible at best. Appellants rely on a theory of bias so severe that the mere

II.     **Rulings as to Substantive Matters of Law**

Moving to the rulings below that Appellants argue demonstrate personal bias on the part of the Bankruptcy Court, the court outlines and responds to Appellants' arguments regarding the Court's decisions on (1) the validity of certain rights of first refusal; and (2) the propriety of sanctions under §§ 524(a)(2) and 524(e) and the effect of past Tenth Circuit case law. Appeal at 66. This court labors to minimize discussion of tangential side issues and to organize Appellants' contentions in a logical and straightforward manner after searching review of the parties' briefing and the Court's decisions below.

A.  **Right of First Refusal**

As mentioned above, the Bankruptcy Court, on the motion of the Bankruptcy Trustee pursuant to 11 U.S.C. § 363, permitted the sale of certain interests in business entities held by the bankruptcy estate as limited by the terms outlined in the pertinent operating agreements. *See in re Hafen*, 625 B.R. at 538. One such relevant restriction "state[d] [that] no limited partner may transfer any Partnership Interest without giving 30 days to other general and limited partners to exercise a right of first refusal." *Id*. at 534. Following *In re Graves*, 609 F.3d 1153, 1156 (10th Cir. 2010), the Bankruptcy Court determined that such transfer restrictions "can still impact the ability and manner in which the Trustee disposes of the property." 625 B.R. at 535.

Upon motions to reconsider this determination, the Bankruptcy Court declined to disturb its earlier order on the motion to sell on the basis of arguments that the underlying entities no longer existed or that the agreements were invalid. *See* Appendix at 367-79 (denying motions to

---

fact of the Firm's representation of Appellants' counterparties created such lasting antagonism towards Appellants in the mind of the Bankruptcy Court that it controlled every single subsequent legal ruling.

8

reconsider). The Court held that the arguments in the motion to reconsider were inconsistent with the parties' arguments in the earlier motion to sell, *id*. at 373, and that such inconsistency created unnecessary delay, costs, and confusion, *id*. at 376; that the parties seeking reconsideration failed to raise key issues in the earlier motion practice, *id*. at 373-74; that the parties had already relied on the order on the motion to sell, *id*. at 375; that the Debtor and Debtor's Affiliates may face prejudice as a result of disturbing the order on the motion to sell, *id*.; and that the parties seeking reconsideration had in their possession but failed to timely raise "[m]any of the facts claimed as newly discovered." *Id*. at 376.

Thus, the Bankruptcy Court offered multiple grounds for declining to reconsider its previous order on the motion to sell, notwithstanding arguments that new evidence showed that the rights of first refusal had been extinguished. Further, the Court explained why, even if it were to hold that the underlying business entities were dissolved, it would not necessarily be the case that transfer restrictions contained in the entities' governing agreement would no longer apply. *Id*. at 378. The Court based this conclusion on its review of relevant state-court decisions. *See id*. at 378 n.6.

In spite of the Bankruptcy Court's searching analysis in the order denying the motions to reconsider, Appellants maintain that the Court's rulings were not only erroneous, but *so erroneous*—even "inexplicable and indefensible," Appeal at 21—as to evidence personal bias. Appellants tempt this court to substantively review the Bankruptcy Court's legal conclusions in the order on the motions to reconsider, which this court necessarily declines to do. However, armed with all relevant facts upon a detailed review of the parties' briefing, the decisions below, and all materials submitted to this court on appeal, this court does not harbor doubts about the judge's impartiality stemming from the legal determination regarding the rights of first refusal or

9

the propriety of reconsideration of its prior order on the same. *See Maez*, 54 F.3d at 1508. Contrary to Appellants' cursory allegations (which fail to grapple with the full extent of the Bankruptcy Court's reasoning in either its initial ruling on the motion to sell or the order on the motions to reconsider), the Court certainly *did* focus on the merits of the issue and did not show any indication of bias or favoritism. *Contra* Appeal at 19.

While this court declines to offer any substantive ruling on the merits of the decision as a matter of law, it is satisfied that the Bankruptcy Court's stated reasons for imposing the transfer restrictions as outlined in the underlying agreements, as well as its reasons for declining to reconsider such order, do not "evidence the degree of favoritism or antagonism required," *Liteky*, 510 U.S. at 555, to mandate recusal or put the Court's decision not to recuse outside "the bounds of permissible choice in the circumstances." *Palzer*, 671 F. App'x at 1027.

### B. Violation of the Discharge Injunction

The second family of grievances that Appellants raise relates to the Bankruptcy Court's determination that the Creditors violated the Debtor's discharge injunction by initiating the state court action and naming the Debtor as a defendant therein. Appellants take issue with the Court's interpretation of 11 U.S.C. §§ 524(a), 524(e), and past Tenth Circuit precedent delineating the boundaries of discharge injunction violations, such as *In re Walker*, 927 F.2d 1138 (10th Cir. 1991), and *In re Paul*, 534 F.3d 1303 (10th Cir. 2008).[2]

---

[2] Appellants also argue that *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), bars a finding of Appellants' contempt and the issuance of sanctions against them. Appeal at 49-51. However, proceedings on the issue of *Taggart* in the Bankruptcy Court have been stayed pending this appeal, Appendix at 1031-32; Appeal at 7-8, and, regardless, the Court's legal rulings, whether correct or not under *Taggart*, do not give rise to an inference of bias or satisfy the "almost never" standard of *Liteky*.

As above, the Appellants argue that the Bankruptcy Court's interpretation of statute and application of precedent are not only erroneous, but *so clearly erroneous* that they are explained only by bias in favor of the Firm. Appeal at 27.[3] Appellants question the sincerity of the Court's rulings, insisting that the sanctions order "emphatically reveals and confirms the magnitude of Judge Thurman's personal bias" in favor of the Firm," and rendered him "blind" to his duty to render impartial decisions. *Id*. at 30.

But, as noted above, the Bankruptcy Court initially declined to issue sanctions against the Creditors, holding that the Creditors' state-court action fit within the exception to discharge defined in 11 U.S.C. § 524(e).[4] *See In re Hafen*, 602 B.R. 764, 770 (Bankr. D. Ut. 2019) ("2019 Order"). The Court followed the persuasive precedent of *In re Robben*, 562 B.R. 469 (Bankr. D. Kan. 2017), as it then understood it, to hold that creditors need only "set[] forth specific factual allegations involving specific parties, and a well-established legal theory to explain the alleged third-party liability." 602 B.R. at 769. Thus, understanding *Robben* and *Walker* in tandem, the Bankruptcy Court held that because "the [state court] Lawsuit does not put the Debtor at risk for personal liability," it would not be prohibited by § 524(a)(2) and is captured by the § 524(e) exception. *Id*. at 769-70.[5]

---

[3] The court does not address Appellants' allegations that the Bankruptcy Court "relied upon a material [mis]representation from Debtor" and related arguments, *see* Appeal at 31-38, because it is not directed to the conclusion of bias or favoritism relevant to the Recusal Order. Appellants' theory of bias does not follow from their allegations regarding the stipulation. *Id*.

[4] "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

[5] As the Bankruptcy Court explained in its order on the motion to sell, the 2019 Order relied on an interpretation of the term "necessary" as used in *Walker* to mean something distinct from the sense of a "required" party under the rules of joinder. *In re Hafen*, 625 B.R. at 532.

In a concurrence to the BAP Opinion, Judge Somers—author of *Robben*—clarified his understanding of *Robben*, opining that "*Robben* does not stand for the proposition that litigation is allowed against a discharged debtor when there are sound legal theories for collection from a third party; the *Walker* test must be satisfied before a claim against a discharged debtor is removed from the broad injunction of § 524(a)(2) by the exception of § 524(e)," *In re Hafen*, 616 B.R. at 582 (Somers, J., concurring), and counseling the Court on remand to consider each claim of the action separately rather than "as a whole" as the Court did in its 2019 Order. *Id*.

On remand, the Bankruptcy Court followed the counsel of the Somers concurrence and elected to first consider whether each claim asserted fell within the scope of the § 524(a)(2) discharge injunction and, if so, whether the § 524(e) exception applied. 640 B.R. at 591. In its analysis of § 524(e), the Court considered whether the Debtor's liability was a *prerequisite* to recovery against any other state court defendants as to each claim *individually*, thus innovating on its earlier interpretation of § 524(e) from the 2019 Order, *id*. at 592, and determined that "[t]he Creditors have not shown how or why establishing the Debtor's liability for any of the twelve claims was a prerequisite to recovering from the other defendants in state court." *Id*. at 596. The Court also found that there was a likelihood of legal costs to the Debtor in such a high amount that the "fresh start" guaranteed by the discharge injunction was, in fact, violated. *Id*.

Appellants contend, however, *not only* that the Bankruptcy Court's 2019 Order was correct as a matter of law on the issue of 11 U.S.C. §§ 524(a) and 524(e), but that any contrary outcome is so clearly erroneous as to be explicable only through operation of some personal bias. Appeal at 30. This is in part because Appellants are of the view that their seven claims naming *only* the Debtor are a prerequisite to obtaining relief against the other Defendants on five other claims. Appeal at 39-40.

Without the ability to name the Debtor in the lawsuit, and with those claims dismissed as a result, Appellants are of the understanding that they cannot pursue their remaining claims against the other defendants. And so they insist that "the *Walker* prerequisite test review must be made of each of the first seven claims for relief to confirm that judgment against the nominal Debtor on one or more of those claims is a prerequisite" to relief on the remaining claims against the other defendants. *Id*. at 40; *accord id*. at 42. Because the Bankruptcy Court did not follow their view of *Walker* (which would, contrary to Judge Somers's counsel, take the action as a whole by viewing the relationship "*between*" claims, *id*. at 43 (emphasis added)), the Appellants doubt that the Court even conducted the *Walker* prerequisite test and call the discussion of *Walker* in the June 3, 2022 order "a nonsensical factual and legal train wreck." *Id*. at 41.

However, the Court's election, in accordance with the statements of Judge Somers in concurrence, *see* 616 B.R. at 581-82 (Somers, J., concurring), to analyze each claim individually under its interpretation of *Walker* and *Robben* does not give rise to an inference of personal bias. The same can be said of the Bankruptcy Court's interpretation of *In re Paul*. *Contra* Appeal at 28-30. Whether correct as a matter of law or not, the Court's claim-by-claim analysis of the Creditors' state-court action under 11 U.S.C. §§ 524(a)(2) and 524(e), *see* 640 B.R. at 592-95, and the difference in outcome from the 2019 Order, exhibits neither bias nor favoritism, *Liteky*, 510 U.S. at 555, sufficient to mandate recusal or put the Court's decision not to recuse outside "the bounds of permissible choice in the circumstances." *Palzer*, 671 F. App'x at 1027.

*   *   *

Appellants will be entitled to seek appellate review of substantive matters of bankruptcy law at a later juncture. However, the question before this court in the resolution of the instant

13

appeal is whether the Bankruptcy Court abused its discretion by declining to recuse itself from this matter. This court is satisfied that it did not.

In reviewing the Bankruptcy Court's legal rulings, this court is unable to find anything but sincere, thoughtful, and careful legal analysis and a clear commitment to the impartial adjudication of complex doctrinal issues by Judge Thurman. This court concludes that the Bankruptcy Court's impartiality cannot reasonably be questioned, 28 U.S.C. § 455(a), and that no reasonable person armed with the relevant facts would harbor doubt about the judge's impartiality. *Maez*, 54 F.3d at 1508. Appellants have failed to raise any colorable inference of bias or favoritism on the part of the Court. Appellants' allegations of and arguments regarding bias are "unsupported, irrational, or highly tenuous speculation," *Hinman*, 831 F.2d at 939, and otherwise unsubstantiated. *Bryce*, 289 F.3d at 659-60. Thus, the Bankruptcy Court fulfilled its affirmative obligation not to recuse. *See Maez*, 54 F.3d at 1508.

This court concludes by noting that Appellee's motion for sanctions, ECF No. 24, remains pending. In light of its ruling herein, the court will carefully consider that motion.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Bankruptcy Court's decision below.

DATED December 4, 2023.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge