# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>ROY NIELSEN HAFEN,<br><br>    Debtor.<br><br>LARRY ADAMS, JED R. CHRISTENSEN, KIRK R. HARRISON, ROGER T. OLDROYD, and RANDY T. SIMONSEN,<br><br>    Appellants,<br><br>v.<br><br>ROY NIELSEN HAFEN,<br><br>    Appellee. | **MEMORANDUM DECISION & ORDER ON APPELLEE'S MOTION FOR SANCTIONS**<br><br>Case No. 2:23-cv-00230-JNP<br><br>Bankruptcy No. 04-25018<br><br>District Judge Jill N. Parrish |

    This action is an appeal from a matter before Judge Thurman of the United States Bankruptcy Court for the District of Utah ("Bankruptcy Court"). Through this appeal, creditors in a pending bankruptcy action ("Creditors") sought review of the Bankruptcy Court's denial of their motion for recusal or disqualification. This court affirmed the order of the Bankruptcy Court. ECF No. 35. Before the court is Appellee's Motion for Sanctions for Frivolous Appeal. ECF No. 24 ("Sanctions Motion"). For the reasons set out below, the Sanctions Motion is **GRANTED**.

**FACTUAL BACKGROUND**

The factual background for this action is outlined in prior orders of the Bankruptcy Court, *see, e.g.*, *In re Hafen*, 640 B.R. 581, 584-87 (Bankr. D. Ut. 2022), as well as the opinion of this court affirming the Bankruptcy Court's decision below. ECF No. 35 ("December Opinion").[1] In short, this action centers around a decade-and-a-half-old bankruptcy. *In re Hafen*, 640 B.R. at 584-85. Appellee Roy N. Hafen ("Debtor") filed a voluntary petition for Chapter 7 bankruptcy relief on March 30, 2004. *Id.* at 585. At that time, the Creditors failed to challenge the discharge or seek non-dischargeability of any debt, and the bankruptcy case was closed on May 11, 2005. *Id.* at 586. In July 2018, Creditors initiated an action in Utah state court against affiliates of the Debtor, as well as the Debtor himself. *Id.* In addition to the state-court action, the Creditors filed a motion to reopen the Debtor's bankruptcy case that same month. Their motion was granted by the Bankruptcy Court, and a Chapter 7 trustee was appointed. *Id.*

A.    **Proceedings in the Bankruptcy Court**

Debtor subsequently filed a Motion for Sanctions in the Bankruptcy Court, arguing that the Creditors' state-court action violated the Debtor's discharge injunction by naming him as a co-defendant. *Id.* at 587. The Bankruptcy Court denied the Debtor's motion, but the Tenth Circuit Bankruptcy Appellate Panel ("BAP") reversed the denial and remanded the matter back to the Bankruptcy Court with instructions to make determinations on the matter of claim ownership and standing, and then to reconsider whether the discharge injunction had been violated. *Id.*; *see also In re Hafen*, 616 B.R. 570 (10th Cir. BAP 2020). On remand, the Bankruptcy Court changed course

---

[1] *Adams v. Hafen (In re Hafen)*, 2023 U.S. Dist. LEXIS 215497, 2023 WL 8372053 (D. Utah Dec. 4, 2023).

and determined that the Creditors had violated the Debtor's discharge injunction. *In re Hafen*, 640 B.R. at 595. This outcome, the Bankruptcy Court explained, was due to the Court's election "to follow the suggestion from the concurrence [to the BAP Opinion] [to utilize] the tests in *Robben* and *Walker* conjunctively." *Id*. at 591.

In the interim period between the BAP Opinion and the Bankruptcy Court's order reconsidering whether the discharge injunction had been violated, the Bankruptcy Court also entered an order on the Chapter 7 Trustee's motion to sell property to the Creditors. *See In re Hafen*, 625 B.R. 529 (10th Cir. BAP 2020). The other defendants in the state-court action objected to the motion to sell. *See* ECF No. 20-1 ("Appendix") at 312-20. In their joinder-in-objection motions, the other defendants were represented by attorneys from McKay, Burton & Thurman ("Law Firm"). In resolving the motion to sell, the Bankruptcy Court determined (upon objection by the Debtor) that transfer restrictions on certain interests established by business-entity operating agreements (including a right of first refusal) were still in effect and would apply to the Trustee's sale.

The Trustee moved the Bankruptcy Court to reconsider its order on the motion to sell as it related to the rights of first refusal. The Bankruptcy Court issued a ruling on the motion to reconsider on September 23, 2021. *Id*. at 367. In that ruling, it considered whether it had made a mistake in its prior ruling as well as the effect of "new evidence [that had] come to light." *Id*. at 371. Ultimately, the Bankruptcy Court elected to deny the motion to reconsider and left the prior order on the motion to sell in place, in part due to the parties' reliance on the prior order and the risk of prejudice. *See id*. at 375-76.

Subsequently, the Creditors filed a motion for recusal or disqualification, requesting that Judge William Thurman recuse or be disqualified from the case primarily as a result of the

3

appearance of the Law Firm. Judge Thurman addressed this motion during a hearing on March 30, 2023. *Id*. at 1016-33. On March 31, 2023, the Bankruptcy Court published its written order denying the Creditors' motion. *Id*. at 1034-35 ("Recusal Order"). The Bankruptcy Court's Recusal Order additionally stayed all matters in the case pending the conclusion of appellate proceedings should Creditors elect to appeal. ECF No. 1-1 at 2. On April 11, 2023, Creditors filed their notice of the instant appeal from the Recusal Order. *See* ECF No. 1.

### B. Proceedings in This Court

28 U.S.C. § 158(a)(3) grants federal district courts jurisdiction to hear appeals from bankruptcy courts, "with leave of the court, from [] interlocutory orders and decrees[.]" Generally, parties are obliged to file motions for leave to file an appeal of an interlocutory order. However,

> if an appellant timely files a notice of appeal under this rule but does not include a motion for leave, the district court or BAP may order the appellant to file a motion for leave, or treat the notice of appeal as a motion for leave and either grant or deny it.

FED. R. BANKR. P. 8004(d).

Here, the record indicates that Appellants failed to file a motion for leave to appeal. However, in the interests of fairness (and to ensure that Appellants' claims could be fully heard), this court elected, in its discretion, to exercise its authority to treat Appellants' notice of appeal as a motion for leave and considered Appellants' argument under its § 158(a)(3) jurisdiction. *Accord United Phosphorus Ltd. v. Fox (In re Fox)*, 241 B.R. 224, 232 (10th Cir. BAP 1999).

On August 9, 2023, Debtor moved this court to impose sanctions on Creditors and Creditors' counsel for filing and pursuing a frivolous appeal. ECF No. 24. On August 22, 2023, the parties filed a Stipulated Motion to Continue Deadline for Opposition to Motion for Sanctions. ECF No. 25. The court, on August 25, 2023, granted the parties' motion to stay the briefing

deadlines on the Sanctions Motion pending resolution of the underlying appeal. ECF No. 26. The court ordered Creditors to file their memorandum in opposition to the Sanctions Motion on or before 14 days after the issuance of the appeal decision. *Id*. On December 4, 2023, this court issued its decision on the underlying appeal, affirming the decision of the Bankruptcy Court to deny Creditors' motion for recusal or disqualification. Under the court's August 25, 2023 order, Creditors were obliged to file any opposition to the Sanctions Motion on or before December 18, 2023. They failed to do so.

On January 1, 2024, Debtor filed a Request to Submit for Decision, noting Creditors' failure to respond to the Sanctions Motion. ECF No. 36. More than two weeks after their deadline to file an opposition, and two days after the Request to Submit for Decision was filed, Creditors appealed this court's decision on the underlying appeal to the United States Court of Appeals for the Tenth Circuit. ECF No. 37. That same day, they filed a document titled "Request to Submit for Motion to Amend Order Granting Motion to Stay," requesting "that the scheduling order be amended to stay the Motion for Sanctions for Frivolous Appeal for an appeal to the 10th Circuit." ECF No. 38. This court did not rule on the request.

On February 1, 2024, the court ordered the parties to file supplemental memoranda of law addressing the question of whether it retained jurisdiction to rule on the Sanctions Motion during the pendency of the appeal to the Tenth Circuit. ECF No. 44. In their supplemental memorandum of law, Creditors stunningly asserted that this court has lacked jurisdiction to hear their interlocutory appeal from the beginning. ECF No. 46. On February 29, 2024, the Tenth Circuit dismissed Appellants' appeal for lack of jurisdiction. ECF No. 50.

In claiming that this court lacks jurisdiction, Creditors apparently misunderstand the legal issues at play. The Tenth Circuit clarified that *its* jurisdiction—that is, the jurisdiction of the United

5

States Court of Appeals for the Tenth Circuit—is generally limited to final orders. This is, of course, a basic precept of federal court jurisdiction. *See* 28 U.S.C. § 1291. The Tenth Circuit, quoting *In re American Ready Mix, Inc.*, 14 F.3d 1497, 1499 (10th Cir. 1994), affirmed that "[a]n order denying a motion to recuse or disqualify a judge is interlocutory, not final[.]" ECF No. 50.

In contrast, the jurisdiction of *this court* is not limited to review of final orders. 28 U.S.C. § 158(a)(3) grants district courts of the United States "jurisdiction to hear appeals . . . from [] *interlocutory* orders and decrees[.]" ECF No. 50 (emphasis added). Because an order denying a motion to recuse or disqualify a judge is interlocutory, it is clearly within this court's jurisdiction. In any case, on March 11, 2024, noting Creditors' continued failure to oppose the Sanctions Motion, this court issued an order permitting the late filing of an opposition memorandum. ECF No. 52. On March 15, 2024, Creditors filed their opposition memorandum in which they represent that they have now filed a petition for writ of mandamus with the Tenth Circuit. ECF No. 55 ("Opp'n Mem.").

## LEGAL STANDARD

"Courts of justice are . . . vested, by their very creation, with power to impose silence, respect, and decorum, in their presence . . . to preserve themselves and their officers from the approach and insults of pollution." *Anderson v. Dunn*, 19 U.S. 204, 227 (1821). Courts' authority to impose sanctions is grounded, first and foremost, in their inherent power to control the proceedings that take place before them. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. (quotation marks omitted). Thus, a federal court may exercise its inherent power to sanction a party

6

or an attorney who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45-46; *accord Ransmeier v. Mariani*, 718 F.3d 64, 68 (2nd Cir. 2013).

Federal courts' inherent powers to sanction extends to the assessment of attorney fees for bad-faith litigation conduct, including for the filing of frivolous pleadings or appeals. *Roadway Express v. Piper*, 447 U.S. 752, 767 (1980); *Chambers*, 501 U.S. at 62; *accord United States v. Akers*, 76 F.4th 982, 991 (10th Cir. 2023); *Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 267 (10th Cir. 1995). These powers also permit the issuance of sanctions where the conduct of the sanctioned litigant or attorney evinces bad faith or an egregious disrespect for the court or judicial process or otherwise repeatedly and in bad faith disparages the court. *Ransmeier*, 718 F.3d at 68; *D'Amico Dry, Ltd. v. Primera Mar. (Hellas), Ltd.*, 886 F.3d 216, 228 (2nd Cir. 2018). Courts may also sanction parties or counsel who "repeatedly and in bad faith accuse[] the court of bias, malice, and general impropriety." *Ransmeier*, 718 F.3d at 68. "These two justifications for imposing sanctions—patently frivolous legal argument and egregious conduct—may emerge in the same case." *Id*. at 69. The election of this court to impose sanctions under its inherent power is reviewed for abuse of discretion. *Chambers*, 501 U.S. at 55.

The Bankruptcy Rules reinforce this inherent power and provide an additional statutory basis for their exercise. FED. R. BANKR. P. 8020(a) provides that "[i]f the district court or BAP determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the

appellee." Rule 8020(b) additionally provides that "[t]he district court or BAP may discipline or sanction an attorney or party appearing before it for other misconduct[.]"[2]

## DISCUSSION

Debtor moves this court to sanction Creditors and their counsel because: (1) the appeal was frivolous and the result was obvious; (2) Creditors misrepresented the record and matters of fact; (3) Creditors showed disrespect and contempt for Judge Thurman of the Bankruptcy Court; and (4) Creditors showed disrespect towards Debtor and his counsel. In this order, the court addresses Debtor's first, third, and fourth arguments.[3] Debtor requests sanctions against Creditors and their counsel, jointly and severally, in the amount of attorney fees and costs incurred in the course of the appeal, together with double costs, in an amount to be determined by this court or by the Bankruptcy Court on remand. Sanctions Motion at 19; ECF No. 57 ("Reply Mem.") at 18.

### I. Merits of the Appeal

First, Debtor argues that the appeal is sanctionable because it is frivolous. An appeal may be frivolous if it consists of "irrelevant and illogical arguments based on factual misrepresentations and false premises . . . or when "the result is obvious, or the appellant's arguments of error are wholly without merit." *Lewis v. Commissioner*, 523 F.3d 1272, 1277-78 (10th Cir. 2008) (internal quotation marks and citation omitted). As this court has noted, Creditors "do not allege any

---

[2] FED. R. BANKR. P. 8020, like FED. R. APP. P. 38, after which it is modeled, *see* FED. R. BANKR. P. 8020 (Notes of Advisory Committee on 1997 Amendments), permits joint and several liability of parties and their counsel. *See Busson-Sokolik v. Milwaukee Sch. of Eng'g (In re Busson-Sokolik)*, 635 F.3d 261, 271 (7th Cir. 2011); *Romala Corp. v. United States*, 927 F.2d 1219, 1225 (Fed. Cir. 1991).

[3] Because the court, in its discretion, concludes that these grounds provide a sufficient basis for sanctions, it declines to opine on the second ground asserted by Debtor.

extrajudicial source of bias whatsoever, instead relying entirely on adverse rulings to make their case." December Opinion at 5. Thus, their claims are governed by the high bar identified by the Supreme Court in *Liteky v. United States*, 510 U.S. 540 (1994), which held that "judicial rulings alone *almost never* constitute a valid basis for a bias or partiality motion," *id*. at 555 (emphasis added), and "only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal." *Id*.

For the reasons set out in its December Opinion, this court concluded that the appeal was nonmeritorious. "[Creditors'] allegations of and arguments regarding bias are unsupported, irrational, or highly tenuous speculation[.]" December Opinion at 14. "In reviewing the Bankruptcy Court's legal rulings, this court is unable to find anything but sincere, thoughtful, and careful legal analysis and a clear commitment to the impartial adjudication of complex doctrinal issues by Judge Thurman." *Id*. Here, however, the court further holds that the appeal was not only nonmeritorious *but also* that the result obtained was so obvious as to render it frivolous. Creditors' legal arguments were irrelevant and illogical, wholly without merit, and all but untethered from any published authority of any court.

Creditors' briefing repeatedly referred to inapplicable, off-point standards of appellate review. For example, their briefs stated that Judge Thurman's decisions were "clearly erroneous" or "clear error" 25 times, even alleging "plain error" at one point. Appeal at 11, 22, 27, 30, 40, 42-45, 54, 56, 60, 62, 63; Reply Brief at 23, 24. In so doing, they evidenced a desire for this court to inappropriately review matters of law through an interlocutory appeal on a motion for disqualification, implying that they weren't really seeking disqualification so much as substantive review of underlying decisions—a sort of appellate sleight of hand. This exhibits bad faith

9

litigation conduct and an abuse of this court's appellate authority to review interlocutory orders for limited purposes.

The court concludes that this appeal, as well as the underlying motion for recusal, were inappropriate judge shopping devices and attempts at short-circuiting normal procedure by seeking early substantive review of the Bankruptcy Court's rulings on matters of bankruptcy law. *See* Sanctions Motion at 4 (quoting Judge Thurman's statements at a March 2023 hearing: "In light of the creditors['] numerous assertions that this court has erred and done so repeatedly, their request that this case be re-assigned to another bankruptcy judge . . . appear[s] to be nothing less than an improper judge shopping device"). Although Creditors are concerned that appellate review of substantive matters of bankruptcy law will only come "too late," Opp'n Mem. at 21, they cannot transform an appeal from the denial of a motion for recusal into a full substantive review. They have abused the limited vehicle of interlocutory review, and their appeal is vexatious, wholly without merit, and in bad faith.

In fact, the court finds that the appeal was in bad faith in the truest sense of that term—exhibiting "[d]ishonesty of belief, purpose, or motive." *Bad Faith*, BLACK'S LAW DICTIONARY (11th ed. 2019). Although purportedly (and formally) for the review of the denial of the recusal motion, Creditors' true purpose and motive was substantive review of matters of bankruptcy law and decisions made throughout the course of the proceedings in the court below. This duplicitous, Trojan-horse style appeal is in bad faith and was, in this case, patently meritless and entirely frivolous.

## II.     Disrespect for Judge Thurman and Counterparties

Creditors' litigation conduct is also sanctionable as a result of their inexcusable, vitriolic *ad hominem* attacks against the Bankruptcy Court. Of course, a motion for disqualification or

10

recusal premised on a theory of bias necessarily entails impeachment of a judicial officer's impartiality or ability to fairly adjudicate some matter before it. A party's rhetoric, however, can transgress the boundaries of civility. The court is of the opinion that Creditors and their counsel crossed this line.

Creditors' counsel, as officers of the court, *Injured Workers Ass'n of Utah v. State*, 2016 UT 21, ¶ 18, 374 P.3d 14, are obliged to demonstrate "respect[] and decorum" before the courts. *Anderson*, 19 U.S. at 227. Infused throughout the briefing, however, are unnecessarily contemptuous and derisive remarks directed towards Judge Thurman that reveal an utter lack of any measure of respect or decorum. Succinctly capturing Creditors' consistent tone of overt disrespect, their brief charges that "Judge Thurman's willingness to do whatever the opposing parties want is *disgusting* and an overt affront to judicial integrity." Appeal at 54 (emphasis added).

And this characterization is not just one stray, thoughtless comment. Such attacks are laced throughout the entirety of both Creditors' brief and subsequent reply brief. They describe the Bankruptcy Court's legal analysis as "a factual and legal train wreck," Appeal at 4, 41; Reply Brief at 20, "inexplicable and indefensible," Appeal at 21; Reply Brief at 2, "egregious and bizarre," Appeal at 39, an "outrage," *id*. at 27, "shocking," *id*. at 42, and made "without any apparent thought whatsoever." *Id*. at 55. They allege that the Bankruptcy Court's analysis is so bad, in fact, that any suggestion that it was legally correct is "laughable," and that a statement in Debtor's filing in the court below that the Bankruptcy Court got it right was "a knowing misrepresentation." *Id*. at 44.

Creditors further accuse the Bankruptcy Court of being "unwilling" to adhere to binding precedents or resolve the case, *id*. at 26, "blind to [his] honored affirmative responsibility to make decisions on the merits," *id*. at 30; *accord* Reply Brief at 8 ("The merits have meant nothing."), and as having forgotten "[t]he overriding search for the truth, the tireless pursuit of justice, and the

11

honored responsibility to decide issues on the merits." Appeal at 64-65; *accord id*. at 21. Creditors also refer to the "author" of certain orders, implying that Judge Thurman was not responsible for the decisions of the Bankruptcy Court and echoing veiled allegations made in letters to Debtor's counsel that Judge Thurman had abdicated his judicial responsibilities and was allowing another person to write his orders for him. *Id*. at 41; Sanctions Motion at 7. Consider a few more particularly stark examples of insulting language directed towards Judge Thurman:

> This gives tremendous insight into what Debtor's counsel believes is necessary for Judge Thurman to accept and adopt any assertion or argument that is made for the benefit of Debtor and the other Defendants – clients of McKay, Burton & Thurman. *Simply make the assertion front and center in the brief so as to not risk Judge Thurman missing it. Make the baseless assertion clear, short, and concise*. No need to support the baseless assertion with any argument. *Counsel knows Judge Thurman will accept the bare baseless assertion and adopt the unsupported baseless assertion in his ruling*.

Appeal at 45 (emphasis added). Elsewhere, Creditors' mocking continues:

> Let's be blunt about what is going on here. Hypothetically, ignoring all ethical considerations – and there are a lot of them [–] *McKay, Burton & Thurman could advertise, "If you have a matter before Judge Thurman and you have absolutely no merit to your position, no problem. Simply, retain McKay, Burton & Thurman, as Judge Thurman will do whatever we want!"*

*Id*. at 55 (emphasis added).

These are not merely indictments as to judicial impartiality that might bear on the question of recusal—these are personal attacks and insults, oftentimes offered in a childish tone. Indeed, at many points, Creditors' briefing airs grievances and hurls insults not even related to bias or directed towards the underlying legal question of recusal. *See* Appeal at 45. For example, Creditors argue that some conclusions and statements in an order of Judge Thurman's "make no sense whatsoever and, undeniably, reveal Judge Thurman's lack of understanding of the prerequisite correlation between the first seven claims for relief and the last five claims for relief." Appeal at 43. Elsewhere,

12

Creditors similarly claim that Judge Thurman "failed to understand" critical aspects of the action. Reply Brief at 25.[4]

For such wanton displays of disrespect and utter lack of decorum, the court finds that Creditors' counsel "allowed antagonism toward the [Bankruptcy] Court to undermine his legal judgment and interfere with his duty to provide thoughtful and reasoned advice to his client." *Ransmeier*, 718 F.3d at 69 (internal quotation marks and citation omitted). It appears to the court that the appeal was a vehicle driven by a desire to "air personal grievances against the [Bankruptcy] Court." *Id*. Thus, this court finds that Creditors' counsel acted in bad faith, and concludes that this conduct is clearly sanctionable.

At no point in their opposition memorandum do Creditors even attempt to contend with the problem of their disrespectful remarks about the Bankruptcy Court. Their memorandum is devoid of any response to Debtor's arguments that the disrespect they exhibited towards the Bankruptcy Court is sanctionable. As a result, it appears that they do not even understand this to be a problem worth responding to in the first place. Instead, they use the opportunity simply to restate their case on the merits. Because Creditors fail to see the problem with such a lack of respect towards Judge Thurman, the court takes this opportunity, in the form of sanctions, to instruct them.

Relatedly, the court wishes to briefly comment on similarly inappropriate comments made in Creditors' papers regarding Debtor and his counsel. Most pointedly, Creditors twice refer to Debtor as "despicable" and frequently refer to him as a "convicted criminal" who "criminally sexually battered an innocent woman," a sharp allegation totally unrelated to any fact at issue in

---

[4] In the midst of this sweeping, contumacious tantrum, Creditors even fling insults at the intelligence of members of the Bankruptcy Appellate Panel, signaling a general attitude of perceived superiority. Reply Brief at 23.

this appeal. *See* Reply Brief at 16-18; Appeal at 5. In correspondence between them, Creditors' counsel also accused Debtor's counsel of "disgusting and appalling" activities and "feed[ing]" at an "unethical trough." Sanctions Motion at 16.

Creditors use their opposition memorandum as a vehicle for more vitriol and unsubstantiated accusations against Debtor's counsel. For example, they speculate, entirely without basis, that Debtor's counsel is responsible for the Law Firm entering the litigation in the first place in order to secure easy wins against the allegedly biased Bankruptcy Court. Opp'n Mem. at 22. As the Eleventh Circuit has noted, "[c]ase law is replete with instances where an attorney has been sanctioned for his or her own unsubstantiated accusations and demeaning, condescending, and harassing comments directed at opposing counsel[.]" *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1325 (11th Cir. 2002) (collecting cases). From this overcharged rhetoric directed at Debtor and Debtor's counsel, the court determines that Creditors and their counsel acted in bad faith, objectively unreasonably, and in clear contravention of the duties owed to this court. The court thus concludes that their behavior constituted misconduct under FED. R. BANKR. P. 8020(b), and that such conduct is clearly sanctionable.[5]

\* \* \*

---

[5] The court also takes opportunity to note some other aberrant, inappropriate behavior displayed by Creditors during the course of the proceedings. Namely, at oral argument on the underlying appeal, Mr. Kirk Harrison, one of the Creditors, interrupted argument multiple times to offer his views of the legal issues before the court. *See* ECF No. 48 at 20:25-22:12. Based on Creditors' own briefing, it appears that Mr. Harrison may be in the habit of doing this, including in proceedings before the Bankruptcy Court. *See* Appeal at 55. Such outbursts not only contravene elementary rules of professional conduct but also betray a profound lack of decorum and respect for courts of the United States.

The court finds that Creditors' appeal was frivolous and in bad faith. Their litigation conduct was similarly in bad faith and wholly without merit. Their papers were frivolous and riddled with inappropriate attacks directed at Debtor and his counsel. Perhaps worst of all, they showed outright disrespect and hostility towards Judge Thurman and the Bankruptcy Court, betraying an utter lack of respect, decorum, or dignity. Taking all of this together, the court elects to sanction Creditors and Creditors' counsel under its inherent powers and pursuant to FED. R. BANKR. P. 8020.[6]

## CONCLUSION & ORDER

For the foregoing reasons, Debtor's Motion for Sanctions for Frivolous Appeal, ECF No. 24, is **GRANTED**. Creditors and Creditors' counsel are sanctioned in the amount of the reasonable attorney fees and costs incurred by Debtor in defending against this appeal, which amount is to be determined by the Bankruptcy Court on remand. Creditors and Creditors' counsel shall be jointly and severally liable for such amount.

DATED March 26, 2024.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

[6] Finally, the court notes that Creditors' opposition memorandum requests the opportunity to conduct discovery and have an evidentiary hearing. The court denies the request. Creditors' frivolous appeal has already been denied, and their conduct before this court has been vexatious, dishonorable, meritless, and a waste of litigant and judicial resources.